STATE, EX REL. E. MABIN, APPELLANT, V. GEORGE W. LOER, APPELLEE.

FILED NOVEMBER 6, 1908. No. 15,222.

1. **Quo Warranto: TITLE TO OFFICE: PLEADING.** In an action of *quo warranto*, brought to determine the respective rights of the relator and respondent to an elective public office, it is not necessary that relator should state in the information that he received the highest number of votes cast for any candidate for the office. It is sufficient in that respect if facts are alleged in the information from which such conclusion may be drawn. Nor is it necessary in such an action that the relator should allege that the votes were canvassed and returned as required by law.

2. ———: ———: ———. In an action of *quo warranto*, where relator's right to a public office is grounded upon the proposition that a legislative act is unconstitutional, it is not necessary to allege that the act is unconstitutional, where the supreme court has previously determined that such act is in conflict with the constitution.

APPEAL from the district court for Box Butte county: WILLIAM H. WESTOVER, JUDGE. *Reversed.*

*B. F. Gilman,* for appellant.

*William Mitchell, contra.*

GOOD, C.

This is an action of *quo warranto* instituted in the district court for Box Butte county by E. Mabin, as relator, to determine the right of the relator and respondent respectively to the office of county commissioner of the

second district in Box Butte county. A general demurrer to the information was sustained, and, the relator refusing to further plead, the action was dismissed. Relator has appealed to this court.

Relator alleged that prior to the general election in November, 1905, he and one Christy were duly nominated for the office of county commissioner for the second commissioner's district in said county; that relator and Christy were the only persons nominated and voted for for said office at said election, and at said general election the relator received 469 votes, and Christy received 419 votes, and that relator was thereby duly elected to the office. He also alleged the issuance by the county clerk of a certificate of election to him, and that he had taken the oath of office and given bond for the faithful performance of the duties of the office, which bond was duly approved by the county judge of said county; that, nothwithstanding the election of the relator to said office, the respondent, the former incumbent of said office, and whose term expired on the 4th of January, 1906, had from the 9th day of January, thence continuously to the filing of the information, without legal warrant, claim, or right, used and exercised the said office. Relator prayed judgment that respondent be declared not entitled to said office, and that he be ousted therefrom, and that the relator be entitled to said office and installed therein.

We are unable to ascertain from the record what reason prompted the trial court to hold the information insufficient. The relator states in his brief that the district court took the view at the time of the ruling that the biennial election law, or rather that part of it relating to county commissioners, had not as yet been declared unconstitutional by this court, and that it was in full force and effect, and that there was no office of county commissioner to be filled at the election of 1905. The respondent contends, however, that the information is insufficient in several respects: First, because it does not allege that the relator received a majority of the votes at the election,

and does not state facts sufficient to show that he was elected to said office. In this, we think that respondent is in error. Under the law in this state a majority vote is not necessary. The law in this state does not require a majority vote to elect to a public office. Where there are two or more eligible candidates for an office, the one who receives the highest number of legal votes is elected. It is immaterial whether such number is a majority or only a plurality. In this instance the relator received a majority. The criticism, if it goes to the point that the statement or conclusion that the relator received a majority of the votes cast for commissioner is not contained in the information, is devoid of merit. Pleading the mere conclusion would be insufficient. The facts from which the conclusion may be drawn are pleaded. This is all that the law requires.

Respondent criticises the information because it fails to state that the votes cast at said election were canvassed and return thereof made.. We are cited to no authority, nor do we know of any, which requires that such an allegation should appear in the information. The information contains averments which show that the relator was eligible to the office; that he was duly nominated, and received the highest number of votes of any candidate for that office; that a certificate of election was issued to him; that he took the oath of office and filed a bond for the faithful performance of his duty, which was duly approved. This was sufficient to show that relator was elected to and entitled to the office.

Under the law, as it existed prior to 1905, it is conceded that there would have been a commissioner to elect in said district at said election in 1905. The legislature of that year attempted to amend the law, so as to require the election of commissioners in the even-numbered years. This attempted legislation is known as chapter 65, laws 1905, otherwise known as the "Biennial Election Law." If that act was valid, there was no office of commissioner in said district to be filled at said election. Relator's

right to the office is founded upon the proposition that the biennial election law is unconstitutional. Respondent contends that, as relator failed to plead that said act was unconstitutional, his information failed to state facts entitling him to the office. The presumption obtains in the first instance that all legislative enactments are valid and constitutional. Respondent contends that under this rule the presumption obtained that the biennial election law was valid, and, as relator did not plead that it was unconstitutional, the question of its unconstitutionality was not presented, and could not be determined. It is not necessary to consider or determine that question in the instant case. After a legislative act has once been declared void because in conflict with the constitution, there no longer remains the presumption in favor of its validity, and there can be no necessity in litigation subsequent to such decision to plead the unconstitutionality of the act. In *State v. Galusha,* 74 Neb. 188, this court held the biennial election law to be void, because in conflict with the constitution of this state. The opinion in that case was filed June 22, 1905. This was several months previous to the general election in 1905, and more than one year before the commencement of this action. The biennial election act was no longer clothed with the presumption of constitutionality. There was therefore no need to plead that it was unconstitutional. That had already been judicially determined. The people of the state have generally accepted that decision as disposing of the act, and have acted in accordance with the ruling of the court. The district court should have recognized this rule as binding upon it, and recognized the fact that the biennial election act was void and of no force and effect.

The information was invulnerable to the objections made. There appears to have been sufficient in the information to entitle the relator to the relief demanded. It follows that the judgment of the district court is erroneous, and it should be reversed and the cause remanded for further proceedings according to law.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.